UNITED STATES of America,
Appellant,

v.

Albert A. CORTELLESSO et al.,
Defendants, Appellees.

No. 78–1446.

United States Court of Appeals,
First Circuit.

Argued March 6, 1979.

Decided June 29, 1979.

Frank J. Marine, Atty., Dept. of Justice, Washington, D.C., with whom Paul F. Murray, U. S. Atty., Edwin J. Gale, Providence, R.I., and Richard Gregorie, Sp. Attys., Boston Strike Force, Dept. of Justice, Boston, Mass., and William G. Otis, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellant.

Kirk Y. Griffin, Boston, Mass., with whom John Tramonti, Jr., Providence, R.I., and Griffin & Higgins, Boston, Mass., were on brief, for defendants, appellees.

Before ALDRICH and CAMPBELL, Circuit Judges, and CAFFREY, District Judge.*

CAFFREY, District Judge.

This is an appeal taken by the United States pursuant to provisions of 18 U.S.C. § 3731 from orders of the District Court suppressing evidence. The first of these orders, entered June 30, 1978, suppressed evidence seized pursuant to search warrants issued April 1, 1977. A second order, entered on October 4, 1978, suppressed evidence seized pursuant to search warrants issued April 4, 1977 on the theory that the April 4 warrant was obtained as a result of

* Of the District of Massachusetts, sitting by designation.

observations made and information learned while executing the April 1 warrants which the District Court had already declared to be unlawful. Thus this case turns on the validity of the April 1 warrants and the orders suppressing evidence obtained thereunder.

Affidavits of Special Agents Roderick J. Kennedy and Bernard Murphy of the Federal Bureau of Investigation furnished the basis for warrants to search and seize for

> stolen goods, wares and merchandise valued in excess of $5,000 which have travelled in interstate commerce, in particular men's suits, sports jackets, women's boots, leather coats, fur coats, rain coats, inventory records, bills, sales records, bills of sale and any document which shows proof of purchase, value and origin of shipment, which are evidence of violations of Title 18, United States Code, Sections 2314, 2315 and 371[1]

from Chi Chi's Ltd. a clothing store located in Providence, Rhode Island, owned by Albert A. Cortellesso, a/k/a Chi Chi, a/k/a Cheech, and from his home in North Providence, Rhode Island. FBI agents executed the warrants with the assistance of a Special Attorney from the United States Department of Justice and an Assistant United States Attorney. They entered the premises of Chi Chi's Ltd. and seized from clothing racks 23 Pierre Cardin suits, 5 suede sport jackets, and 25 cashmere coats plus other items which are not the subject matter of the indictment. On the same day, FBI agents, under the supervision of Special Agent Kennedy, entered Cortellesso's home and there they seized two handguns and some children's clothing bearing the name "Health Tex" along with other items which are not in issue. Goods observed but not seized on April 1 provided the basis for the April 4 warrant under which the agents returned to Cortellesso's home and store and seized from Chi Chi's Ltd. articles named in the April 4 warrant.

Thereafter, Cortellesso and Ralph Altieri, his son-in-law, an employee at Chi Chi's Ltd., were indicted for conspiracy to possess and conceal stolen goods which had moved in interstate commerce in violation of 18 U.S.C. §§ 371, 659, 2315, and with receiving and concealing goods stolen from an interstate shipment in violation of 18 U.S.C. §§ 2315, 2. Cortellesso was additionally charged with possession of goods stolen from an interstate shipment in violation of 18 U.S.C. § 659, with removing property before its seizure in violation of 18 U.S.C. § 2232, and with possession of a firearm as a previously convicted felon in violation of 18 U.S.C. App. § 1202(a)(1).

The District Court granted defendant's motion to suppress on the ground that the April 1 warrants failed to particularly describe the items to be seized. In so holding the District Court relied chiefly on *Montilla Records of Puerto Rico, Inc. v. Morales*, 575 F.2d 324 (1st Cir. 1978) and *United States v. Klein*, 565 F.2d 183 (1st Cir. 1977).

On appeal, the government raises several arguments. Because we reverse and hold that the warrants in question did meet the particularity requirement of the Fourth Amendment and consequently are valid, we need not decide the other issues presented to us.

We first turn to the question whether the generic description contained in the April 1 warrants was of sufficient particularity. The government urges that this case falls squarely within *Vitali v. United States*, 383 F.2d 121, 122 (1st Cir. 1967), wherein we stated "[w]here goods are of a common nature and not unique there is no obligation to show that the ones sought . . . necessarily are the ones stolen, but only to show circumstances indicating this to be likely." The government contends that the circumstances of the case at hand are quite different from those of *Montilla Records* and *Klein*. We agree.

In *United States v. Klein, supra*, the warrant authorized seizure of "certain 8-track electronic tapes and tape cartridges which

---

1. This language is from the text of the search warrant authorizing a search of Chi Chi's Ltd. The warrant authorizing a search of defendant's home is essentially the same with differences not here relevant.

are unauthorized 'pirate' reproductions." Judging the sufficiency of that warrant on the basis of the facts presented to the magistrate, we concluded that neither the warrant nor its supporting affidavit assured the magistrate that the executing officers would be able to differentiate a pirate reproduction from a legitimate eight-track tape. The evidence before the magistrate established that an aural comparison and an investigation of copyrights would aid the executing officer in determining which were pirate tapes, but that this comparison could only be done after the fact. Just as significantly, there was no evidence before the magistrate to establish that there was a large collection of pirated tapes in the defendant's store. Consequently, we ruled that the evidence available to the magistrate was inadequate to assure him that authorized tapes would not be seized.

In *Montilla Records of Puerto Rico, Inc. v. Morales, supra,* the evidence established that there was probable cause to believe that Montilla was engaged in the illegal manufacture only of recordings bearing a Motown label yet the warrant in that case authorized the seizure of "sound recordings including but not limited to records, cartridges and cassettes which have been manufactured from sound recordings protected by the Copyright Act without the permission of the sound recordings copyright owners . . . ." We noted that the evidence before the magistrate failed to show that Motown production constituted a significant part of Montilla's output or that Montilla was a "pirate manufacturer." Because of the likelihood that authorized recordings also would be seized, we again required greater particularity in the warrant.

 We are unable to find anything in either *Montilla Records* or *Klein* which suggests that a generic description can never pass constitutional muster. To the contrary, in *Klein, supra* at 187, we recognized that at least in some cases generic descriptions are sufficient. *Eg., United States v. Scharfman,* 448 F.2d 1352 (2d Cir. 1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); *United States v. Vitali, supra; United States v. Averell,* 296 F.Supp. 1004 (E.D.N.Y.1969). Concomitant with that recognition, we formulated two similar but significantly different tests which must be met before a magistrate may issue a valid warrant containing only a generic description. In *Klein* we required first, that the evidence presented to the magistrate must establish that there is reason to believe that a large collection of similar contraband is present on the premises to be searched, and second, that the evidence before the magistrate must explain the method by which the executing agents are to differentiate the contraband from the rest of defendant's inventory. It is well-settled that under the warrant clause of the Fourth Amendment an impartial magistrate must ascertain that the requisite standard is met prior to the issuance of a search warrant. *See, e.g., Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The facts recited in the affidavits tendered to the magistrate in support of the application for a warrant in *Klein* and in *Montilla Records* failed to meet the two-part standard enunciated in *Klein.*

In the instant case, however, an examination of the record establishes that the magistrate was well justified in finding on the basis of the evidence before him that a description in generic terms was adequate. The warrants when viewed against the facts contained in the supporting affidavits were not impermissibly broad.

First, the affidavits presented to the magistrate established a specific and detailed foundation for the belief that a large collection of similar contraband was present on the premises to be searched. The affidavits contained facts derived from conversations of agents with informants and from telephone calls intercepted under the authority of a wiretap which calls corroborated information furnished by the informants. The affidavits revealed that approximately 740 suits each worth "a buck and a quarter" ($125.00), stolen from a truck in New York City, were on the prem-

ises of Chi Chi's Ltd., as well as women's leather boots, slacks, dresses, raincoats, men's short leather jackets, Indian jewelry, Pierre Cardin suits, oxford suits and cashmere sportcoats. In addition, the affidavits established a reasonable belief that Cortellesso dealt with stolen property, used his home as a warehouse for stolen items, used his store for the sale of those items, and that he sold clothing at slightly more than one-third the clothing's known value and sold other items at substantially less than their known value. Thus, in contrast to *Montilla Records* and *Klein* where there was no evidence presented to the magistrate to support the conclusion that stolen goods constituted a dominant or even significant part of the inventory, here the record affords an ample basis for the magistrate not only to believe that stolen items constituted a dominant part of the goods on the premises, but also to conclude that Cortellesso maintained Chi Chi's Ltd. for the purpose of disposing of a large collection of stolen goods through a facade of legitimacy. *See, United States v. Scharfman, supra* at 1355.

Although the District Court's oral ruling shows that it was cognizant of our decisions in *Klein* and *Montilla Records*, it ruled that since the affidavits presented to the magistrate were not appended to the warrants, the affidavits could not be used to provide the particularity it found lacking in the warrants. However, the Court should have considered whether the affidavits presented to the magistrate the justification which in *Klein* we deemed necessary to support the use of a generic description in a warrant. An examination of the affidavits in light of the two tests articulated in *Klein* satisfies us that they clearly establish not only that a large collection of similar contraband was on the premises, thereby making it likely that the goods to be seized would be stolen goods, *see Vitali v. United States, supra*, but also that for all practical purposes the collection could not be precisely described for the purpose of limiting the scope of the seizure, *Spinelli v. United States*, 382 F.2d 871, 886 (8th Cir. 1967), *rev'd on other grounds*, 393 U.S. 410, 89 S.Ct. 584, 21

L.Ed.2d 637 (1969). The affidavits revealed that labels had been removed from the Pierre Cardin suits so that a more precise description would not have assisted the officer in the field and, that with respect to other stolen items, only a generic description was known. Accordingly, we believe that the affidavits established that the officer who applied for the search warrants could only have been expected to describe the generic class of the items he sought. *See, James v. United States*, 416 F.2d 467, 473 (5th Cir. 1969), *cert. denied*, 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970); *United States v. Scharfman, supra; Spinelli v. United States*, 382 F.2d 871 (8th Cir. 1967), *rev'd on grounds*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We remain fully mindful of the United States Supreme Court's admonition in *United States v. Ventresca*, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), that warrants are to be tested "in a commonsense and realistic fashion" and not in a hypertechnical manner. *Haefeli v. Chernoff*, 526 F.2d 1314, 1319 (1st Cir. 1975). Under the foregoing circumstances, a precise description of the goods to be seized became a practical impossibility. Moreover, the affidavits did not leave the magistrate speculating whether the executing officers could differentiate the stolen goods from the legitimate inventory since there was a great likelihood that the goods to be seized would be indeed stolen. *See, Vitali v. United States, supra.*

In *Delaware v. Prouse*, —— U.S. ——, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the United States Supreme Court reiterated:

The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law-enforcement agents, in order ' "to safeguard the privacy and security of individuals against arbitrary invasions. . . ." ' *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978), quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).

Under the circumstances of this case, there was little likelihood of a violation of personal rights. *See, United States v. Johnson,* 541 F.2d 1311, 1313 (8th Cir. 1976).

█ Accordingly, we reject the District Court's conclusion that the April 1 search warrant was not sufficiently particularized to pass constitutional muster. In our view, the portion of the warrant describing stolen goods was adequately particularized when evaluated under the standards set out in *Klein.*

█ We likewise agree with the appellant's contention that the warrant's description of documents and papers to be seized was adequate. A general search for inventory records, sales records, and bills of sales was not authorized by the warrant. Rather the warrant directed search and seizure only of documents which are evidence of violations of 18 U.S.C. §§ 2314, 2315 and 371. In a similar situation, the Second Circuit stated "[i]t was entirely reasonable . . . for the magistrate to conclude that books and records would be utilized as instrumentalities in connection with the crime of disposing of hundreds of . . . garments through a facade of legitimacy." *United States v. Scharfman, supra* at 1355. *Accord, Haefeli v. Chernoff, supra* at 1319. We hold that the warrant contained a description of evidentiary material subject to seizure, *e.g., Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Damitz,* 495 F.2d 50, 56 (9th Cir. 1974), adequate to enable the executing officer to distinguish reliably the documents to be seized. Several cases have upheld document descriptions nearly verbatim to that describing the documents to be seized in the April 1 warrant involved herein. *E. g., Andresen v. Maryland,* 427 U.S. 463, 481 n. 10, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *United States v. Jacobs,* 513 F.2d 564, 567 (9th Cir. 1974); *United States v. Scharfman, supra* at 1355.

█ Finally, we turn to the District Court's suppression of the evidence seized pursuant to the April 4 warrant as constituting fruits of the search conducted pursuant to what the District Court considered to be the illegal April 1 warrants. The record establishes that while executing the April 1 warrants the agents discovered items not contained in the warrants which they had reason to believe were evidence of other crimes. The agents then sought and obtained the April 4 warrants to seize those additional items. Thus, the seizure of items pursuant to the April 4 warrant may be justified on the basis of the search conducted pursuant to the April 1 warrants which we have held herein to be valid. *See, United States v. Gordon,* 421 F.2d 1068, 1072, *cert. denied,* 398 U.S. 927, 90 S.Ct. 1816, 26 L.Ed.2d 89 (1970). Accordingly, we hold that a seizure of items pursuant to the subsequent warrant issued upon information learned by FBI agents executing the prior lawful search is valid. *See United States v. Gordon, supra* at 1072–73.

Reversed and remanded for further proceedings not inconsistent herewith.