**UNITED STATES of America**

v.

**Howard CHRISTINE and Perry Grabosky.**

**Crim. No. 80–416.**

United States District Court, D. New Jersey.

Feb. 17, 1983.

W. Hunt Dumont, U.S. Atty. by Donald J. Fay, Asst. U.S. Atty., Newark, N.J., for United States.

John W. Morris, Philadelphia, Pa., for defendant Perry Grabosky.

F. Emmett Fitzpatrick, Philadelphia, Pa., for defendant Howard Christine.

## OPINION

BROTMAN, District Judge.

This case is now before the court on remand from the Court of Appeals. The court has been directed to redact the search warrant at issue in this case.

*Procedural History*

Defendants Howard Christine and Perry Grabosky are charged in a ten-count indictment with conspiring to violate, and violating, 18 U.S.C. § 657. It is alleged that the defendants, owners of a home improvement business, made payments to a savings and loan officer to induce him to approve credit applications by homeowners without regard for the creditworthiness of the applicants.

The government is seeking to introduce at trial evidence seized during a search of the defendants' business office. The search and seizure were executed pursuant to a warrant issued by United States Magistrate William J. Hunt on November 28, 1979. The warrant was based on an affidavit by one Richard Scott, an investigator for the Department of Housing and Urban Development (HUD).

The defendants moved almost two years ago to suppress the property seized in the search. Their motion was granted by order of this court entered March 12, 1981. In our opinion filed that date, we found that the scope of the search authorized by the warrant greatly exceeded the probable cause showing made before the magistrate. We held that this invalidated the entire warrant and required the suppression of all property seized thereunder.

This decision was challenged by the United States, which moved for reconsideration on the grounds that the affidavit had established probable cause to believe that the defendants were engaged in widescale bankruptcy fraud, thus justifying the broad sweep of the warrant. This motion for reconsideration was denied by order of the court entered May 13, 1981. In our opinion filed that date, we rejected the government's contention that the affidavit established probable cause as to widescale bankruptcy fraud.

This decision was appealed. The appeal presented the Third Circuit with an opportunity to consider for the first time whether to adopt the practice of redaction, as a means of salvaging the valid, severable portions of a partially invalid search warrant. The Court of Appeals concluded that "redaction is an efficacious and constitutionally sound practice," *United States v. Christine,* 687 F.2d 749, 759 (3rd Cir.1982), and vacated this court's suppression order. The case was remanded with instructions to consider redaction as an alternative to invalidating the entire search warrant.

On remand defendants contend, in the alternative, that: (1) none of the warrant's clauses is supported by probable cause; (2) each of the warrant's clauses is overly broad; (3) the warrant is not redactible. The government, by contrast, avers that the warrant may be redacted.

*Decision*

The Court of Appeals has directed us to "consider whether the Scott affidavit establishes probable cause to support each severable clause of the search warrant. Only

those clauses unsupported by probable cause should be invalidated." *Christine, supra,* at 759–60. Thus, the court's present task is to perform a three-step operation. The first step is to determine the "severable" clauses of the search warrant. The second step is to limn the contours of the Scott affidavit's probable cause showing. The third step is to compare each severable clause to the probable cause showing.[1]

### 1. *Severable Clauses*

The critical section of the warrant, for our inquiry, is that describing the property to be seized. It reads:

(a) all folders and all documents contained therein and all other documents relating to home improvements and home improvement contracts pursuant to the HUD Title I Insured Home Improvement Loan program; (b) all checks, check stubs and bank statements, deposit slips and withdrawal slips, reflecting the receipt and disbursement of funds through Landmark Builders, Inc. for the period January 1, 1977, to the present; (c) all general ledgers, general journals, cash receipt disbursement ledgers and journals for the period January 1, 1977, to the present; (d) all correspondence to and from and submissions to Collective Federal Savings and Loan; and (e) all other documents, papers, instrumentalities and fruits of the crime of submission of false statements in connection with the HUD Title I Insured Home Improvement Loan program as well as any evidence of a scheme to defraud HUD or Collective Federal Savings and Loan or any other creditor by use of the United States mails.

■ The Court of Appeals did not indicate how the clauses of the warrant might be severed. However, the Court did caution us that "warrants 'must be treated by courts in a commonsense and realistic fashion.'" *Christine, supra,* at 760, *quoting from United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Applying such a pragmatic analysis, we find that the relevant portion of the warrant can first[2] be divided into five, free-standing clauses—those clauses set off by semi-colons and lettered "(a)" through "(e)." The court arrives at this conclusion for a number of reasons. As used, the letters and semi-colons plainly fence the description into discrete compartments. *Cf. United States v. Johnson,* 690 F.2d 60, 64 (3rd Cir.1982). The subject matter of each identified clause is distinct; different categories of documents are described by each clause. The language of each clause is not linked in any way to the language of the other clauses. (*E.g.,* one clause does not refer to another clause or modify the meaning of another clause.) Finally, each of the identified clauses retains its significance when isolated from the rest.

### 2. *Probable Cause Showing*

Prior to the appeal in this case we defined the precise boundaries of the Scott affidavit's probable cause showing. We held that "[t]he affidavit established probable cause to believe that defendants had bribed one individual at a particular savings institution to approve certain specific loan applications submitted by particular uncredit-worthy individuals." *United States v. Christine,* No. 80–416, slip op. at 3 (D.N.J. March 12, 1981). This finding was not questioned by the Court of Appeals, which quoted our ruling without comment. *See Christine, supra,* at 752.

After rereading the Scott affidavit, and considering other possibilities, we are compelled to reaffirm our earlier finding on the scope of the affidavit's probable cause

---

1. The government, in its letter of November 23, 1982, suggests that we may bypass the terms of the warrant and directly match the evidence seized in the search against the underlying probable cause showing. This approach was sharply criticized by the Court of Appeals in *Christine,* and rejected. *See* 687 F.2d at 759.

2. By so dividing the warrant here, we do not mean to suggest that the clauses may not be further refined or subdivided, should such refinement be necessary (*e.g.,* due to the invalidity of certain terms within the clauses). *See* discussion concerning clause "(e)," *infra.* This primary division is being undertaken here to facilitate the reduction analysis.

showing. That is, the Scott affidavit established probable cause to believe that the defendants had bribed an officer of Collective Federal Savings and Loan ("Collective") to approve HUD Title I Insured Home Improvement loans ("HUD Title I loans") for a limited number of uncreditworthy individuals. The affidavit did not establish probable cause to believe that the suspect dealings extended to other loan officers or to other lending institutions. The affidavit did not establish probable cause to believe that the suspect dealings involved other than HUD Title I loans. The affidavit did not establish probable cause to believe that the defendants were engaged in widescale fraud.

3. *Measuring the Severable Clauses Against the Probable Cause Showing*

Under the third step of the required analysis, the court must compare the authorization of each severable clause of the warrant against the scope of the probable cause showing. Once this is done it becomes readily apparent that clauses "(a)" through "(d)" are substantially broader in scope than their probable cause basis. Each of these clauses fails to refer to either Collective or HUD Title I loans, or both, despite the critical importance of both subjects to the probable cause showing.[3] The court must determine whether this overbreadth renders the clauses invalid.

This determination turns on the application of one of the basic principles of Fourth Amendment law, which was restated by the Court of Appeals in *Christine:* "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." 687 F.2d at 753, *quoting* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 4.6, at 97 (1978). *See United States v. Roche,* 614 F.2d 6, 7 (1st Cir. 1980). This principle flows from the junction of the Fourth Amendment's particularity and probable cause requirements. *See*

*Christine, supra,* at 758, n. 12; 2 LaFave § 4.6, at 96. It is one of the means by which force and content are given to the chief object of the Fourth Amendment—the protection of individual privacy from unreasonable invasions. *See Warden v. Hayden,* 387 U.S. 294, 304–05, 87 S.Ct. 1642, 1648–49, 18 L.Ed.2d 782 (1967).

In evaluating whether the overbreadth of each description is justified, the court is guided by a number of considerations. Due to the especially serious threats they pose to privacy, warrants authorizing the search and seizure of personal papers are held to more exacting standards of specificity than warrants authorizing the search and seizure of other kinds of property. *Andresen v. Maryland,* 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976). Greater precision than ordinarily required is needed when there exists a high probability of finding on the premises to be searched innocuous items in the same general category as those items to be seized. *United States v. Bright,* 630 F.2d 804, 812 (5th Cir.1980); *United States v. Abrams,* 615 F.2d 541, 544–45 (1st Cir. 1980); *United States v. Klein,* 565 F.2d 183 (1st Cir.1977). Conversely, searches for contraband may be held to lesser standards of particularity. *See generally United States v. Klein, supra.* The greater the amount of assistance a given reference would provide to the officer executing the search, the less justified the omission of that reference from the warrant's description. *See Bright, supra,* 630 F.2d at 812; *United States v. Cortellesso,* 601 F.2d 28, 32 (1st Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *United States v. Scharfman,* 448 F.2d 1352, 1354 (2nd Cir.1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); 2 LaFave § 4.6 at 99. Similarly, the greater the feasibility of a precise, specific description in a warrant, the less justifiable the employment of a general or generic description. *Montilla Records of Puerto Rico v. Morales,* 575 F.2d 324, 326 (1st Cir.1978); *Cortellesso, supra,* 601 F.2d at 32.

---

**3.** Because, as noted above, the five clauses stand completely apart and do not "cross-ferti-

lize" one another, references within one clause cannot be used to particularize another clause.

■ Bearing these considerations in mind, the court finds that clauses "(a)" through "(d)" of the search warrant are unjustifiably overbroad and hence, invalid. Clause "(a)" contains no reference to Collective. Clause "(d)," by contrast, refers to Collective but omits any mention of HUD Title I loans. Clauses "(b)" and "(c)" do not tie the items sought to either Collective or HUD Title I loans. These omissions cannot be justified since: (1) the warrant authorized a search for personal papers; (2) there was a high probability (confirmed by the search) of finding innocuous documents among the papers and records on the premises; (3) the property sought was not contraband; (4) the terms omitted would have sharply focused the executing officer's search; and (5) the additional terms could have easily been incorporated into the warrant and easily understood.

Clause "(e)" presents a different matter. It refers explicitly to Collective and to the HUD Title I loan program. It is not, however, a model of stellar draftsmanship. Most glaring is its authorization to search and seize evidence relating to creditors other than Collective, despite the absence of a probable cause showing as to such other creditors. Also troublesome is the clause's phrasing in the alternative. It authorizes the seizure of items linked to either Collective or HUD Title I loans. It does not *require* that both links be present, though it implies that items connected to both Collective and HUD Title I loans rank highest on the list of items sought.

■ We find, however, that these imprecisions do not render this clause fatally defective. The phrase "or any other creditor" may be severed from the rest of the clause without impairing the clause's integrity or dashing its meaning. This removes the clause's most serious flaw. As to the arguably loose construction of the remainder of the clause, we are mindful of the Court of Appeals' injunction to "avoid a hypertechnical approach by heeding the admonition that 'the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract.' " *Christine, su-*

*pra,* at 760, *quoting from United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). We are also mindful of that Court's recent statement that "a warrant must be read as a whole," so that the fact that its language could be improved does not, *ipso facto,* make the warrant invalid. *United States v. Johnson, supra,* 690 F.2d at 64, 66. We see no reason not to apply this lesson to the severed part of a warrant.

Taking a practical and commonsense tack, we find that the thrust of clause "(e)" was to put the officer executing the search on alert for evidence linked to two key subjects: Collective and HUD Title I loans. These subjects are the distinctive references which leap out from the clause; these are the aspects of the items sought which are highlighted. To be sure, it would have been better if the clause had expressly directed the seizure of items with both associations. But on the whole we find that, if the phrase "or any other creditor" is severed, the remainder of the clause authorizes a search which does not stray impermissibly beyond the bounds of the probable cause showing.

■ Two more issues remain before we may rule on whether the warrant should be redacted. The defendants argue that even if a portion of the warrant may be valid, redaction is prohibited here because it would amount to "an abuse of the warrant procedure." This argument is derived from *Aday v. Superior Court of Alameda County,* 55 Cal.2d 789, 13 Cal.Rptr. 415, 421, 362 P.2d 47, 53 (1961), one of the seminal decisions on redaction, which was cited with approval in *Christine.* We note that the Court of Appeals strongly implied that the warrant at bar is not the kind which concerned the *Aday* court—*i.e.,* it is not the type of warrant for which redaction is inappropriate. *See Christine, supra,* at 760 n. 15. After reviewing the warrant, we also find that its preservation through redaction would not clash with the objectives of the Fourth Amendment.

We must also decide, under the rule of *Warden v. Hayden,* 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967), whether the "mere evidence" sought by

clause "(e)," as refined above, would aid the government in a particular apprehension or conviction. This issue has not been contested by defendants and we find without hesitation that the *Warden* test is met here.

Accordingly, we hold that the search warrant may be redacted by deleting clauses "(a)" through "(d)" and amending clause "(e)" so that the warrant authorizes the search for and seizure of "all documents, papers, instrumentalities and fruits of the crime of submission of false statements in connection with the HUD Title I Insured Home Improvement Loan program as well as any evidence of a scheme to defraud HUD or Collective Federal Savings and Loan by use of the United States mails."[4]

A suppression hearing shall be held to determine, on an item by item basis, whether the evidence seized in the search was authorized for seizure by the warrant, as redacted. The parties may wish to pursue the suggestion of the Court of Appeals that the seizure of evidence not described in the warrant, as redacted, may have been justified under the plain view doctrine. *See Christine, supra,* at 757 n. 10 and at 761 (Gibbons, J., concurring).

---

**4.** Deletion of the word "other" before the word "documents" is dictated by the redaction of the remainder of the warrant. Its deletion does not change the essential meaning of the clause and is effected for cosmetic rather than substantive reasons.