**UNITED STATES of America**

v.

**Alfred CLOUGH, Defendant**

**No. CRIM. 02–74–B–H.**

United States District Court,
D. Maine.

Feb. 27, 2003.

Gail Fisk Malone, Assistant United States Attorney, Bangor, ME, for United States of America.

David W. Bate, Esq., Bangor, ME, for Alfred Clough, defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS

HORNBY, District Judge.

The defendant's motion to suppress is GRANTED part and DENIED in part.

There were two searches, each conducted pursuant to warrant. Their purpose was to discover evidence of illegal, *i.e.* unregistered, firearms and explosives under 26 U.S.C. § 5861(d).

There are three categories of dispute.

### 1. Probable Cause.

▉ The defendant attacks the first warrant because the probable cause determination depends upon a confidential informant's ("CI's") statements and upon hearsay concerning the CI's previous reliability. The attack fails. I apply the totality of the circumstances analysis of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The applying law enforcement officer recounted statements from the CI. The CI had provided very specific and detailed information about the presence on the defendant's premises of weapons (Claymore anti-personnel mines, other land mines, grenades, shoulder-fired rocket launchers and anti-tank guns) and the manufacture of weapons (machine guns). The information was based upon the CI's personal observations at the defendant's residence and other buildings, as well as the CI's conversations with the

defendant.[1] The applying officer also recounted that a state trooper had inquired of the Madison, Maine, police and been informed that the CI had given them reliable information on six previous occasions. The fact that the latter is hearsay does not disqualify it from being contextually considered by the magistrate judge in assessing the detailed and specific information coming from the CI. The applying officer confirmed from ATF's National Firearms Act Branch that the defendant had registered no firearms. (The ordnance in question demanded registration under Title 26.) Finally, the applying officer and other agents sent the CI to the defendant's residence, followed him there, observed the defendant's premises, then met with the CI afterward. At that time, the CI produced a 9 mm machine gun that he had obtained from the defendant during his visit.

▉ "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." 462 U.S. at 238–9, 103 S.Ct. 2317. That standard is certainly satisfied here.

### 2. Specificity of the Warrant.

▉ *(a) The Residential Search Warrant.* The defendant attacks the first warrant for authorizing the seizure of:

I. Receipts and other documentation, both paper and electronic, regarding the purchase, manufacture or sale of illegal firearms or explosive devices

---

1. Among other things, the CI recounted that the defendant told him that he worked at M.I.T. and tested weapons for defense contractors, and that he was selling machine guns and explosive devices. The CI described the machines the defendant used and where they were located. He gave physical descriptions of baseball-type grenades, Claymore anti-personnel land mines, and other land mines. He described how the defendant test-fired the machine guns he manufactured, and described the prices he was seeking. He also described how the defendant filled grenade bodies with a plastic explosive, whose color he described.

J. Books, sketches or diagrams regarding the construction of illegal firearms or explosive devices

Search warrant of 9/20/02 at 1 (Docket No. 25, ex. 3). The defendant complains that the warrant does not give a statutory citation for the illegality. He also argues that where written materials are involved, the First Amendment demands a "scrupulous exactitude" that goes beyond the Fourth Amendment's "particularity" requirement. I conclude that the warrant need not cite the statute. Permitting seizure of materials that relate to "illegal firearms or explosive devices" is sufficiently particular.[2] As for the "scrupulous exactitude" requirement, that comes from *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). There, books, pamphlets and papers of a mail-order book business were being seized on the basis that possession and use of the literature were unlawful. The items to be seized here, by contrast, were to be seized not because possessing or using the written material itself was unlawful, but only if the material related to the crime of receiving or possessing unregistered firearms. That is like the sales ledger of an unlawful enterprise (consider ledgers of a drug dealer, for example) that the Supreme Court distinguished in *Stanford v. Texas*. *Id.* at 484 n. 16, 85 S.Ct. at 511 n. 16. The "scrupulous exactitude" is reserved for "when the 'things' are books, and the basis for their seizure is the ideas which they contain." *Id.* at 485, 85 S.Ct. 506.

■ *(b) The Computer Search Warrant.* The residential search warrant authorized the agents to seize computers on the defendant's premises, and they did so. Then they sought and obtained a second warrant to search three computers' hard drives. That second warrant authorized seizure of:

a. text documents of any variety, including e-mail, websites, records of chat sessions, correspondence or shipping records; and

b. digital images of any variety, including still images and videos.

Search Warrant of 11/15/02 at 2 (Docket No. 25, ex. 6). The agents searched the computers pursuant to the second warrant. But there were no restrictions on the search, no references to statutes, and no references to crimes or illegality. The omission seems likely to have been a clerical error, occurring in the heat of the moment in seeking the second warrant, but the scope of the warrant as written is clearly excessive, and no justification was provided for such an unlimited search. The whole point of a warrant is to make general searches impossible. *United States v. Hinds*, 856 F.2d 438, 440 (1st Cir.1988); 3 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 670 at 718 (2d ed.1982). The government recognizes "that viewed in iso-

---

**2.** The defendant has not articulated why a reference to "illegal" firearms is insufficiently particular. In fact, that is a carefully circumscribed category under Title 26 (largely things like machine guns, sawed off shotguns, other modified weapons and specified types of ordnance). Although there could be other categories of illegal weapons (for example, felons and domestic violence misdemeanants are prohibited from possessing firearms), the defendant has not argued that such categories applied to him, thereby making all weapons on his premises illegal. Therefore, the case is unlike *United States v. Roche*, 614 F.2d 6,7 (1st Cir.1980), suppressing the products of a search under a warrant authorizing seizure of all documents reflecting insurance fraud when the probable cause was limited to motor vehicle insurance fraud, or *In re Application of Lafayette Academy*, 610 F.2d 1, 3–4 (1st Cir.1979), suppressing the products of a search warrant under a warrant authorizing seizure of all documents reflecting fraud and conspiracy where the probable cause was limited to fraud in the Federal Insured Student Loan Program.

lation, this language grants undue discretion to the executing officers to determine what evidence to seize, and may well run afoul of the particularity requirements under the First Amendment." Gov't Opp'n to Def.'s Mot. to Suppress at 8 (Docket No. 27). The concession is appropriate. As written, the warrant does indeed violate the scrupulous exactitude standard. Or, if it is considered exact because it authorizes seizure of everything, then there is no probable cause for such a wide ranging search. *See, e.g., United States v. Roche*, 614 F.2d 6, 7 (1st Cir.1980); *In re Application of Lafayette Academy*, 610 F.2d 1, 3–4 (1st Cir.1979). The government points out that the *affidavit* refers to these items as "evidence of the crime of possession of unregistered machine guns and destructive devices" and that the affidavit cites the statute. The government argues, therefore, that the overall context make clear what the government was trying to seize. But the affidavit was not incorporated into the warrant and thus it does not narrow the warrant itself, which is the official document handed to the homeowner when the government seeks to intrude. *See Roche*, 614 F.2d at 8 (no narrowing unless affidavit accompanies warrant and is incorporated within it); *In re Application of Lafayette Academy*, 610 F.2d at 4–5 (same).

■ The government also relies upon the good faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *i.e.*, that items seized by a law enforcement officer who in good faith executes a search warrant issued by a neutral and detached magistrate are not to be suppressed. *Leon* specifically noted, however, that "depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." 468 U.S. at 923, 104 S.Ct. 3405. Unfortunately for the government, that is the case here. Anyone, including a law enforcement officer, who bothered to read this warrant would know immediately that it could not authorize seizure of every text document and every digital image, no matter how innocent. The government may not rely on this warrant for items it has seized.[3]

### 3. Items Seized Outside the Warrant(s).

The defendant argues that the following items were seized ostensibly under the residential search warrant, but that they are not within its scope:

CD–ROMs with titles such as Ebay 2001 Spreadsheets, Sold Items from Auction Sites—Started 3/20/02 Pictures of Sold Items from Auction Sites

Secrets of Methamphetamine Manufacture (a book)

The Survival Chemist (a book)

Military Trader (a magazine).

---

3. The briefs in this case seem to have overlooked a critical issue. The first warrant explicitly authorized the seizure of "all computers, computer related components and other digital storage devices," as well as "electronic" receipts and documentation of the illegal firearms in paragraph (I). The defendant has not challenged that authorization beyond the arguments described in text. Why the government needed the second warrant, therefore, is unclear to me. *See United States v. Upham,* 168 F.3d 532, 534–37 (1st Cir.1999). Nevertheless, the government agents conducted a "cursory" review of the hard drives of three computers they seized, then sought the second warrant. The defendant seems to attack the "cursory" review in his reply memorandum, to which the government has not requested permission to respond. The parties shall confer on this issue and notify the court by March 13, 2003, how they propose to proceed.

*See* Def.'s Mot. to Suppress at 6 (Docket No. 25). The defendant seems to offer these as examples of wider categories of information that should be excluded. I do not see how I can rule by category. I am also not clear whether he seeks only to suppress these items, or whether he is seeking their return. No one has provided me the items in question, so I do not know what they contain. The government, moreover, has not responded to this part of the defendant's argument, so I do not know to what extent the government agrees or disagrees. (Certainly some of the titles seem unrelated to possession of an unregistered firearm or explosive.) Counsel shall notify the Clerk's Office by March 13, 2003, whether this issue remains in dispute.

The defendant also asserts that he does not yet know what the government seized under the computer warrant and reserves the right to move to exclude such items later. Since, I have found the second computer warrant too vague, I consider this request **Moot**.

Accordingly, to the extent the government relies upon the second warrant, the contents of the computers seized as a result are **Suppressed**; the motion is otherwise **Denied**.[4]

**So Ordered.**

---

**4.** I am disappointed that neither party cited the First Circuit authority of *Roche, Lafayette* and *Upham.*